IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| **TIFFANY SNIDER-JEFFERSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 2:15-cv-406** |
| ) | |
| **AMIGO MOBILITY** ) | |
| **INTERNATIONAL, INC.** ) | |
| *trading as* ) | |
| **Amigo Mobility and/or Amigo,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

This is a products liability case wherein the Plaintiff asserted claims for negligent design of an electronic shopping cart against the Defendant, designer of the cart. Before the Court is Defendant's Motion for Summary Judgment, filed on June 28, 2016. ECF No. 45. Plaintiff timely filed a response in opposition on July 11, 2016. ECF No. 49. Defendant replied on July 14, 2016. ECF No. 50. The Court held a hearing on August 12, 2016. ECF No. 76. The Court also heard arguments on Defendant's Motion to Exclude Plaintiff's Expert Testimony, ECF No. 43, Defendant's Motion to Strike, ECF No. 58, and Plaintiff's Motion to Exclude Defendant's Experts, ECF No. 62. The parties fully consented to jurisdiction before the undersigned, ECF Nos. 18-20, and the motions are ripe for decision. For the following reasons, Defendant's Motion for Summary Judgment, ECF No. 45, is **GRANTED**, and the matter is **DISMISSED WITH PREJUDICE**. All remaining motions on the docket are **MOOT**.

## I. FACTUAL BACKGROUND

On July 20, 2013, Plaintiff was standing at the entrance to a Wal-Mart store in Norfolk, Virginia, when another shopper who was riding an Amigo "ValueShopper" cart struck Plaintiff's ankle with the cart's platform edge, injuring the Plaintiff. ECF No. 38 ¶¶ 5, 8. Plaintiff asserted a negligence claim against Defendant,[1] alleging that Defendant "had a duty to use sound engineering and design practices to produce an electric cart that would be reasonably safe to operate." *Id.* ¶ 16. Plaintiff asserted six grounds for her defective design claim: (1) the design omitted a soft rubber bumper on the lower leading edge of the cart; (2) the leading edge was made of a hard material with a 90 degree angle and had no protective guard; (3) the angle of the lower leading edge of the cart directed energy to a small area that made a collision with a pedestrian likely to result in lacerations; (4) the lower leading edge was unreasonably sharp and dangerous; (5) the design failed to include a pressure sensitive shut-off or "kill" switch; and (6) the design failed to incorporate an audible warning system to notify shoppers of the cart's presence. *Id.* ¶¶ 17-32.

Pursuant to the Rule 16(b) Scheduling Order, Plaintiff timely disclosed her expert witness, Dr. Sebastian Y. Bawab ("Dr. Bawab"), a mechanical engineer, and provided Defendant a report containing his complete opinions. ECF No. 44 attach. 2. Dr. Bawab completed an engineering analysis report in which he "was requested to analyze the current design of the metal platform edge of an AMIGO Value[S]hopper and suggest modifications to improve the safety of the unit when in contact with a pedestrian." ECF No. 46 attach. 1. Dr. Bawab conducted a field inspection of the cart and reconstructed the incident using computer modeling. *Id.* at 1-2. Dr.

---

[1] Plaintiff originally filed her complaint in the Circuit Court for the City of Norfolk on July 15, 2015, against Wal-Mart Stores East, LP, and Amigo Mobility International, Inc. ECF No. 1 attach. 1. Wal-Mart removed the case to this Court on September 15, 2016. ECF No. 1 Plaintiff filed an Amended Complaint by leave of court, ECF# No. 38, and a dismissal order as to Wal-Mart on August 10, 2016, ECF No. 74.

Bawab used the Plaintiff's height and weight for the human pedestrian aspect of the model. *Id.* Dr. Bawab completed this simulation using a metal platform edge at the base of the cart and then again, including a rubber bumper on the metal edge. *Id.* The computation results revealed that when the cart's metal platform edge hit the model human, it had a "more concentrated" stress value of 1.9 MPa (megapascals). *Id.* at 3. Dr. Bawab then covered the edge with rubber, and ran the computation again. *Id.* The stress value was "more dispersed," at a value of 0.6 MPas. Dr. Bawab concluded the following:

> 1) The metal platform is considered an inferior product for its application as it has sharp edges exposed that can be in direct contact with a pedestrian flesh [sic] based on its intended use.
> 2) A simple and cost effective solution, such as adding a rubber bumper to the metal platform edge would have mitigated the concentrated stress when impacting the flesh. Our designed rubber bumper shows stress reduction of modeled flesh/skin by a factor over 3 in comparison to exposed metal platform edge [sic].
> 3) Blunting sharp contact edges will reduce the chance of cutting and mitigate localized stresses and thus reducing [sic] the likelihood of potential inquiry.

*Id.* at 4-5.

In his report, Dr. Bawab did not consider any industry or government standards when assessing the cart's design. Dr. Bawab did not consider whether the cart met consumers' expectations. Dr. Bawab did not compare the cart to competitors' carts, did not consider published literature, and did not research the existence of other cart injuries or accidents. *See* Bawab Dep. at 88-89, 98-99, 103.

Defendant promulgated an expert in response, who referenced Underwriters Laboratory ("UL") standards 3456 and 1439, which apply to Electric-Battery-Powered Carts for Commercial Use, and Safety Tests for Sharpness on Edges on Equipment, respectively. ECF No. 63 attach. 1 at 3; ECF No. 66 attach. 2. Amigo withdrew their expert witness on this matter, ECF No. 66 at 2, though had cross-designated Wal-Mart's expert who presented similar opinions, *see* ECF No.

63 attach. 4 (Wal-Marts' expert report). On July 15, 2016, Plaintiff's counsel responded with a rebuttal report from Dr. Bawab. ECF No. 59 at 1 n.1. In his rebuttal report, Dr. Bawab referenced the UL standards cited by Defendant's expert, disputing their application and the cart's compliance thereto. ECF No. 59 attach. 1 at 6-7. Dr. Bawab also presented new opinions in his rebuttal, this time stating that his professional opinion was that the metal platform edge was both "inferior and dangerous." *Id.* at 8. Defendant motioned to exclude Dr. Bawab's testimony, and strike his rebuttal report. ECF Nos. 43 and 58.

## II. STANDARD OF REVIEW

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A court should grant summary judgment if the nonmoving party, after adequate time for discovery, has failed to establish the existence of an essential element of that party's case, on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To defeat a motion for summary judgment, the nonmoving party must go beyond the facts alleged in the pleadings and instead rely upon affidavits, depositions, or other evidence to show a genuine issue for trial. *See id.* at 324. Conclusory statements, without specific evidentiary support, are insufficient. *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998). Rather, "there must be evidence on which the jury could reasonably find for the [party]." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

This case comes before the Court under 28 U.S.C. § 1332(a)(1) (diversity jurisdiction), and arose from an incident at a Wal-Mart store in the Eastern District of Virginia. Accordingly, Virginia law controls the substantive legal issues at play. *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 420 (4th Cir. 1993) ("Because the situs of the accident was Virginia, the law of that state will apply in this diversity action.").

"To prevail in a products liability case under Virginia law, the plaintiff must prove that the product contained a *defect* which rendered it *unreasonably dangerous* for ordinary or foreseeable use. In addition, the plaintiff must establish that the defect existed when it left the defendant's hands and that the defect actually caused the plaintiff's injury." *Id.* (citing *Logan v. Montgomery Ward & Co.*, 216 Va. 425, 219 S.E.2d 685 (1975)) (emphasis added). To establish the existence of a defect, the plaintiff must present expert witness testimony that the product violated an industry or government standard. *Lemons v. Ryder Truck Rental, Inc.*, 906 F. Supp. 328, 331 (W.D. Va. Nov. 21, 1995). If no such standards exist, the plaintiff must present expert witness testimony that the product violated the reasonable expectations of consumers, which "can be established through 'evidence of actual industry practices, . . . published literature, and from direct evidence of what reasonable purchasers considered defective.'" *Alevromagiros*, 993 F.2d at 420-21; *see also Lemons*, 906 F. Supp. at 331 (explaining that industry standards should be considered first, and only in the absence thereof should an expert consider consumer expectations). "In short, a product can only be defective if it is imperfect when measured against a standard existing at the time of sale or against reasonable consumer expectations held at the time of sale." *Sexton By & Through Sexton v. Bell Helmets, Inc.*, 926 F.2d 331, 337 (4th Cir. 1991) (applying Kentucky law).

Plaintiff's expert, Dr. Bawab, failed to consider any standards when analyzing the cart. Dr. Bawab's analysis was limited to modeling the incident in order to determine the edge of the cart's stress impact on human flesh. Dr. Bawab concluded that the cart without a rubber bumper was "inferior," and that blunting the edges or adding a rubber bumper would mitigate the likelihood of injury. Essentially, "[Dr. Bawab] testified to that which *could* have been done to avoid [P]laintiff's injuries in this case. But that is not the equivalent of what was required to have been done." *Sexton*, 926 F.2d at 337 (emphasis in original).

"Virginia law requires manufacturers to make reasonably safe products, [but] it does not require them to adopt the safest conceivable design. *Redman v. John D. Brush & Co.*, 111 F.3d 1174, 1177 (4th Cir. 1997) (citing *Austin v. Clark Equipment Co.*, 48 F.3d 833, 837 (4th Cir. 1995)). To demonstrate the cart was defective, *i.e.*, unreasonably safe, Dr. Bawab needed to define the relevant standard, *Sexton*, 926 F.2d at 338 (defining a defect as "an imperfection measured against a then-existing standard or reasonable consumer expectation"), as "it would be speculative and misleading for the expert to opine that the [cart] did not meet that undefined standard." *Redman*, 111 F.3d at 1179. Then, Dr. Bawab needed to point to an aspect of the cart's design and demonstrate that the cart's design fell below the defined standard. *Compare Morgen Indus., Inc. v. Vaughan*, 252 Va. 60, 64, 471 S.E.2d 489, 491 (1996) (finding sufficient evidence of a defect where plaintiff's expert "testified that industry standards promulgated by the American National Standards Institute recommend the use of wheel guards to prevent injuries from occurring at 'nip points'"), *with Garlinger v. Hardee's Food Sys., Inc.*, 16 F. App'x 232, 236 (4th Cir. 2001) (applying West Virginia law) (finding insufficient evidence of a defect where the plaintiff's expert concluded "that coffee served at 180 to 190 degrees is hot enough to cause burns and that coffee served at a lower temperature is less likely to do so," because that

6

testimony, though accurate, failed "to address the key question of whether it was *unreasonable* for Hardee's to serve coffee at that temperature" in accordance with food or beverage industry standards).

The evidentiary sequence in the present case was similar to that in *Alevromagiros*, where the plaintiff was injured when a ladder he was standing on bent and twisted beneath him. 993 F.2d at 419. The plaintiff's expert testified about the absence of safety features that were present on competitors' ladders, such as triangular bracing and stiffeners. *Id.* On cross-examination, the plaintiff's expert acknowledged the application of American National Standards Institute ("ANSI") and UL standards. *Id.* The expert admitted that the defendant's ladder complied with the UL standards but disagreed that the ladder conformed to the ANSI standards, though he failed to perform the recommended ANSI tests on an undamaged ladder. *Id.* at 419-20. The court granted the defendant's motion for a directed verdict, finding that the plaintiff's expert "never performed the recommended physical tests to determine whether the ladder . . . conformed to the published industry standards. He testified to no customs of the trade, referred to no literature in the field, and did not identify the reasonable expectations of consumers." *Id.* at 421. The court highlighted the trial judge's comments: "Don't we have to have more than just somebody saying, I am an industrial engineer and I have looked at this ladder, it is the only one I have really looked at for this purpose, but I don't like it, there ought to be something else done to it?" *Id.* at 420. The court also emphasized that simply because other manufacturers fitted their ladders with certain features, did not make the defendant's ladder defective. *Id.* at 422.

Similar to the situation in *Alevromagiros*, Plaintiff here presented nothing more than an expert, a mechanical engineer, who examined the cart and determined that its design could be better, finding the cart ought to be fitted with a rubber bumper. Dr. Bawab presented no

7

evidence that existing government or industry standards called for carts to be equipped with rubber bumpers, or that consumers expected carts equipped with rubber bumpers. In fact, in his deposition, Dr. Bawab indicated that his role was limited to analyzing the stress impact of the bumper, but that he did not evaluate the cart's design for safety. Bawab Dep. at 98-99, 124 ("I cannot give an evaluation of the safety of design [sic]."). Dr. Bawab testified that he did not review any literature in the field, did not consider "any relevant industry regarding the utility, the safety of carts of this nature, assisted mobile devices," or standards. Bawab Dep. at 88-89, 103. As to consumer expectations, Dr. Bawab testified that he did not gather data about the carts in use or consider the "number or nature of incidents or injuries that have been reported in connection with the use of th[e] cart[s,]" or whether any other injuries have been reported. Bawab Dep. at 79, 97.

Plaintiff cannot satisfy the elements for a prima facie case by demonstrating what *could* make the cart better, but instead must demonstrate how the cart's design fell below a set standard. Dr. Bawab referenced the UL standards only in rebuttal to Defendant's expert. However, Dr. Bawab used his rebuttal report to do more than merely rebut Defendant's expert; Dr. Bawab used his rebuttal to bolster his testimony in accordance with the standard Plaintiff needed to meet in order to make a prima facie case for negligent design, changing his opinion on whether the design was unreasonably dangerous. An expert cannot bootstrap new opinions onto a rebuttal when those new opinions were available to the expert at the time of his initial disclosure, even if part of a rebuttal is well-founded. "A rebuttal or reply expert report is proper if the intent of the report is 'solely to contradict or rebut evidence on the same subject matter identified by the opposing party's expert report,'" *Withrow v. Spears*, 967 F. Supp. 2d 982, 1001 (D. Del. Aug. 22, 2013) (citing *Glass Dimensions, Inc. ex rel. Glass Dimensions, Inc. Profit*

*Sharing Plan & Trust v. State St. Bank & Trust Co.*, 290 F.R.D. 11, 16 (D. Mass. Jan. 14, 2013)); "[i]t does not, however, permit an expert to correct mistakes based on information that was available to the expert well in advance of the issuance of his report," *Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10 C 204, 2013 WL 3147349, at *4 (N.D. Ill. June 19, 2013); *see also Kleen Products*, 306 F.R.D. at 592 ("This is the very purpose of a reply report: to refute a defendant's expert's arguments and to provide further support, rather than abandoning, one's initial opinions."); *Boles v. United States*, No. 1:13CV489, 2015 WL 1508857, at *4 (M.D.N.C. Apr. 1, 2015) ("[A]n expert report must directly address an opposing expert's findings or opinions to qualify as rebuttal."). Plaintiff's initial disclosures also confirmed for Defendant that Dr. Bawab's original report contained his complete opinion. ECF No. 46 attach. 2 (designating in Plaintiff's Rule 26(a)(2) Expert Disclosure that his original report is "[a] complete statement of all opinions the witness will express and the basis for those opinions"). And, even considering the rebuttal in part, Dr. Bawab's opinion still fell short of the standard required. Dr. Bawab failed to perform the recommended UL 1439 sharpness testing on the cart's edge, and Dr. Bawab never indicated whether UL standards required a rubber bumper, as he concluded in his original report.

In sum, Plaintiff failed to make a prima facie case of design defect because she failed to demonstrate the violation of an industry standard or of reasonable consumer expectations. The evidence Plaintiff presented to make a prima facie case is simply insufficient; thus, Plaintiff has failed to establish the existence of an essential element of her case on which she bears the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323. Summary Judgment in favor of Defendant is therefore appropriate.

## IV. CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment, ECF No. 45, is **GRANTED**, and the matter is **DISMISSED WITH PREJUDICE**. Because summary judgment is appropriate based on the shortcomings of Dr. Bawab's initial report, the following motions are therefore **MOOT**: Defendant's Motion to Exclude Plaintiff's Expert Testimony, ECF No. 43, Defendant's Motion to Strike, ECF No. 58, and Plaintiff's Motion to Exclude Defendant's Experts, ECF No. 62. Should Plaintiff wish to appeal, she must file a Notice of Appeal with the Clerk of this Court within thirty (30) days of the date of this order. *See* Fed. R. App. P. 3, 4.

The Clerk is **DIRECTED** to forward a copy of this Order to counsel of record for the parties.

It is so **ORDERED**.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
August 17, 2016